**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIGHTSQUARED INC., *et al.*, | ) | Case No. 12-12080 (SCC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| LIGHTSQUARED LP, LIGHTSQUARED INC., LIGHTSQUARED INVESTORS HOLDINGS INC. TMI COMMUNICATIONS DELAWARE, LIMITED PARTNERSHIP, LIGHTSQUARED GP INC., ATC TECHNOLOGIES, LLC, LIGHTSQUARED CORP., LIGHTSQUARED INC. OF VIRGINIA, LIGHTSQUARED SUBSIDIARY LLC, SKYTERRA HOLDINGS (CANADA) INC., AND SKYTERRA (CANADA) INC., | ) ) ) ) ) ) ) ) ) ) | Adv. Pro. No. 13-1390 (SCC) |
| Plaintiff-Intervenors, | ) | |
| -against- | ) | |
| SP SPECIAL OPPORTUNITIES LLC, DISH NETWORK CORPORATION, ECHOSTAR CORPORATION, AND CHARLES W. ERGEN, | ) ) ) ) | |
| Defendants. | ) | |

**ORDER SELECTING MEDIATOR AND GOVERNING MEDIATION PROCEDURE**

By this Order (the "*Order*"), the Court authorizes the Honorable Robert D. Drain, of the United States Bankruptcy Court for the Southern District of New York, to serve as a mediator (the "*Mediator*") in the above-captioned chapter 11 cases of LightSquared Inc. and its affiliated debtors, as debtors and debtors in possession (collectively, the "*Debtors*").

# RECITALS

A. **WHEREAS**, on May 14, 2012, the Debtors each commenced a voluntary case (collectively, the "*Chapter 11 Cases*") under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the Southern District of New York (the "*Court*");

B. **WHEREAS**, on August 6, 2013, Harbinger Capital Partners, LLC; HGW US Holding Company, L.P.; Blue Line DZM Corp.; and Harbinger Capital Partners SP, Inc. (collectively, "*Harbinger*") commenced the above-captioned adversary proceeding (the "*Adversary Proceeding*"). On August 22, 2013, the Debtors intervened in the Adversary Proceeding on limited grounds [Adv. Docket No. 15]. U.S. Bank National Association ("*U.S. Bank*"), Mast Capital Management LLC ("*Mast*"), and the Ad Hoc Secured Group of LightSquared LP Lenders (the "*Ad Hoc Secured Group*") also intervened on the same day [Adv. Docket Nos. 12, 14]. By Order dated November 14, 2013 (the "*November Order*"), this Court (i) granted motions to dismiss the amended complaint filed by Harbinger [Adv. Pro. Docket No. 43], (ii) granted Harbinger leave to file a second amended complaint that did not assert claims on Harbinger's own behalf, and (iii) authorized the Debtors to file a complaint setting forth the basis for their intervention. On November 21, 2013, the Court issued its *Memorandum Decision Granting Motions To Dismiss Complaint*, which set forth the bases for the November Order [Adv. Pro. Docket No. 68].

C. **WHEREAS**, on November 15, 2013, the Debtors filed a Complaint-in-Intervention in the Adversary Proceeding, and, on December 2, 2013, Harbinger filed a Second Amended Complaint (together, the "*Complaints*"). Certain counts of the Complaints were dismissed by Order dated December 12, 2013 [Adv. Pro. Docket No. 97].

2

D.     **WHEREAS**, on January 9, 2014, the Court commenced a trial in the Adversary Proceeding, which trial concluded on January 17, 2014, with closing arguments held on March 17, 2014.

E.     **WHEREAS**, on March 19, 2014, the Court commenced a confirmation hearing on the *Debtors' Third Amended Joint Plan Pursuant to Chapter 11 of Bankruptcy Code* (the "***Plan***"), which evidentiary hearing concluded on March 31, 2014, with closing arguments held on May 5 and May 6, 2014.

F.     **WHEREAS**, on May 8, 2014, the Court issued two decisions from the bench. With respect to the Adversary Proceeding, the Court held, among other things, that the claim of SP Special Opportunities LLC ("***SPSO***") against LightSquared LP shall be equitably subordinated in an amount to be determined after further proceedings before the Court, and the Court denied claims for tortious interference and disallowance of SPSO's claim. In its confirmation decision in the Chapter 11 Cases, the Court denied confirmation of the Plan. After issuing its decisions, the Court directed the parties to work together to attempt to reach a resolution on all plan issues and on the amount of equitable subordination and to provide the Court with an update on May 27, 2014. After May 27, 2014, if no resolution had been reached, the Court informed the parties that it would seek to appoint a mediator.

G.     **WHEREAS**, the Court held a status conference on May 27, 2014 (the "***Status Conference***") at which the following parties were present: the Debtors; the Special Committee of the Boards of Directors of LightSquared Inc. and LightSquared GP Inc. (the "***Special Committee***"); Harbinger; Mast; U.S. Bank; the Ad Hoc Secured Group; SIG Holdings, Inc.; Fortress Investment Group LLC; and SPSO (with their respective principals, attorneys, and

3

advisors, each a "*Party*" and, collectively, the "*Parties*"). At the Status Conference, the Parties informed the Court that no resolution had been reached.

H. **WHEREAS**, the Court indicated on the record of the Status Conference that it would contact the Mediator to determine his availability and willingness to mediate in the Chapter 11 Cases and the Adversary Proceeding.

## ORDER

**NOW**, **THEREFORE**, in consideration of the foregoing recitals, which are incorporated into this Order, the Court hereby orders as follows:

1. The Court authorizes and appoints the Honorable Robert D. Drain, United States Bankruptcy Judge for the Southern District of New York, to serve as Mediator in these Chapter 11 Cases and in the Adversary Proceeding and to conduct the mediation as set forth herein (the "*Mediation*").

2. As outlined on the record at the Status Conference, the Mediator is authorized to mediate any issues concerning, among other things, the terms of a plan or plans of reorganization for the Debtors, including the following disputes:

- the amount of equitable subordination of the claim of SPSO (the "*SPSO Claim*") and the classification and treatment of the SPSO Claim in a plan of reorganization;

- the allocation of estate value among the various constituencies and the structure of a plan or plans of reorganization for the Debtors;

- certain other plan confirmation or other issues appropriate for mediation, as determined by the Parties and the Mediator.

3. The Parties shall meet and confer with the Mediator to establish procedures and timing for the mediation.

4

4.      Unless otherwise directed by the Mediator, each of the Parties, including their respective principals, attorneys, and advisors, may attend and participate in the mediation sessions.

5.      The Mediator may require each Party participating in the mediation sessions to appear with at least one (1) principal or other individual with authority to make a decision binding upon such Party.

6.      On or before the first mediation session or submission to the Mediator, each Party shall submit to the Mediator and each other Party a separate statement setting forth with specificity such Party's claims against and/or interests in the Debtors (the "*Ownership Statement*"), provided, however, that neither the Debtors nor their Special Committee shall be required to submit an Ownership Statement. Any Party or its counsel that represents more than one claim or interest holder, or represents a party that in an agency or trustee capacity has received direction from one or more claim or interest holder(s) with respect to these Chapter 11 Cases, shall complete a separate Ownership Statement for each claim or interest holder that such Party represents or from whom it takes direction. The Ownership Statement shall include (a) the name and address of the Party and (b) the face amount of each disclosable economic interest (as defined in Bankruptcy Rule 2019) held in relation to the Debtors as of the date of the Ownership Statement. If any fact disclosed in an Ownership Statement changes materially during the course of the Mediation, such Party shall promptly submit a supplemental Ownership Statement setting forth the materially changed fact.

7.      Subject to the consent of the Mediator and the Parties, the Parties may schedule mediation sessions as necessary.

5

8.      Subject to the written consent of each of the Parties and the Mediator (including via email), any other party may participate in the Mediation.

9.      The results of the Mediation are non-binding.

10.     There shall be an absolute mediation privilege, and all communications made by a Party (a "*Disclosing Party*") in connection with the Mediation, including discussions or communications with or in the presence of the Mediator, shall be confidential, protected from disclosure (and shall not be disclosed) to other Parties (except as such Disclosing Party may agree) or to third parties (including holders of securities or claims for which the Party is acting in a representative or trustee capacity to the extent such holders are not themselves Parties), shall not constitute a waiver of any existing privileges and immunities, and shall not be used for any purpose other than the mediation (the "*Absolute Mediation Privilege*").  Submissions by each Party (or any third party participant) to the Mediator, including correspondence, offers, or counteroffers made in connection with the mediation, shall not be submitted to any other person or entity without the consent of the submitting Party (or any submitting third party participant). Nothing herein shall restrict any Party from providing its own Mediation submissions to any other Party.  For the avoidance of doubt, the Parties shall not disclose to any court, including in any pleading or other submission to any court, any such discussions or communications made in connection with the Mediation, unless otherwise available to such Party and not subject to a separate confidentiality agreement or protective order which would prevent its disclosure.  For the avoidance of doubt, and notwithstanding any separate confidentiality agreements or confidentiality provisions in relevant credit agreements or indentures, all Parties participating in the Mediation shall comply with the terms of this Order and maintain the Absolute Mediation Privilege.  The terms of this Order (as may be supplemented or amended by further orders), and

not any separate confidentiality agreement or confidentiality provisions in relevant credit agreements or indentures, shall govern the protection of communications or discussions in connection with the Mediation.

11.  All settlement proposals, counterproposals, and offers of compromise made during the mediation sessions (collectively, "***Settlement Proposals***") shall (a) remain confidential unless the Party making such Settlement Proposal agrees to the disclosure of any such Settlement Proposal, (b) be subject to protection under Rule 408 of the Federal Rules of Evidence and any equivalent or comparable state law, and (c) shall not constitute material nonpublic information.

12.  No Party shall (a) be or become an insider, a temporary insider, or fiduciary of any Debtor or any affiliate of any Debtor (collectively, the "***Debtor Parties***"), (b) be deemed to owe any duty to any of the Debtor Parties or the Debtors' estates, (c) undertake any duty to any party in interest, or (d) be deemed to misappropriate any information of any of the Debtor Parties, with respect to each of foregoing clauses (a) through (d), as a result of (x) participating in the Mediation conducted pursuant to this Order without reliance on this Order, (y) being aware, or in possession, of any Settlement Proposal, or (z) with respect to the Mediation, acting together in a group with other holders of securities issued by the Debtor Parties ("***Debtor Party Securities***"); provided, however, that nothing herein shall affect any Party's pre-existing fiduciary obligations.

13.  No party in interest in these Chapter 11 Cases, including each of the Debtors or any successor to the Debtors, shall have any claim, defense, objection, or cause of action of any nature whatsoever against a Party, including, but not limited to, any objection to a claim, or any other basis to withhold, subordinate, disallow, or delay payment or issuance of any consideration

7

to a Party on account of a claim based on such Party's trading in Debtor Party Securities by reason of such Party's receipt, as a result of participation in the Mediation, of (a) information with respect to which, at the time of such trading, such Party has no duty of confidentiality under a Confidentiality Agreement, or (b) a Settlement Proposal, whether or not such Settlement Proposal is confidential; *provided*, *however*, that nothing herein shall be deemed to waive any claims for non-compliance with this Order or any other contractual confidentiality obligations.

14. At the conclusion of the Mediation, the Mediator shall file with the Court a memorandum stating (a) that the Mediator has conducted the Mediation, (b) the names, addresses, and telephone numbers of counsel and advisors who participated in the Mediation, and (c) whether and to what extent the Mediation was successful.

15. The Mediator shall be authorized to report to the Court on the good faith of any or all of the Parties.

16. The sanctions available under Fed. R. Civ. P. 16(f) shall apply to any violation of this Order and, except as modified herein, the provisions of Rule 9019-1 of the Local Bankruptcy Rules of the Southern District of New York governing alternative dispute resolution and mediation matters shall apply to the Mediation.

17. This Order shall be governed by, and construed in accordance with, the laws of the state of New York without regard to the conflicts of laws principles thereof.

18. The Parties are authorized and empowered to take such steps and perform such acts as may be necessary to implement and effectuate the terms of this Order.

19. Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), 7062, and 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

20. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: May 28, 2014
New York, New York

>*/s/ Shelley C. Chapman*
>HONORABLE SHELLEY C. CHAPMAN
>UNITED STATES BANKRUPTCY JUDGE